UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| FRANCISCA BALLESTEROS, | ) | No. ED CV 10-301-PLA |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 10, 2010, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 7, 2010, and April 9, 2010. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 10, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on February 4, 1968. [Administrative Record ("AR") at 74.] She has a ninth grade education, and has past relevant work experience as an assembly worker and utility worker, among other things. [AR at 104-11, 145-46, 148.]

On January 12, 2005, plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been disabled since October 20, 2003, due to severe fatigue, Human Immunodeficiency Virus ("HIV"), depression, and fungal infection. [AR at 37, 74-78, 132, 144-45, 641-44.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 33-34, 37-49.] A hearing was held on August 8, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. A medical expert and a vocational expert also testified. [AR at 647-82.] On November 5, 2007, the ALJ determined that plaintiff was not disabled. [AR at 10-19.] The Appeals Council denied plaintiff's request for review of the hearing decision. [AR at 5-8.] On June 20, 2008, plaintiff filed a complaint in this Court in Case No. ED CV 08-798-PLA, challenging the 2007 decision. [See AR at 686, 696.] On June 3, 2009, judgment was entered remanding the case to defendant for further proceedings. [See id.] On remand, a different ALJ held a hearing on September 30, 2009, at which time plaintiff appeared with counsel and again testified on her own behalf. Two medical experts, a vocational expert, and plaintiff's husband also testified. [AR at 847-87.] On December 17, 2009, the ALJ again determined that plaintiff was not disabled. [AR at 683-93.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date, October 20, 2003.[1] [AR at 688.] At step two, the ALJ concluded that plaintiff has the severe impairments of AIDS, lumbar strain, diabetes mellitus, depressive disorder, and a history of polysubstance dependence. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work[3] with certain limitations: "no operation of motorized or dangerous equipment

---

[1] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through December 31, 2009. [AR at 688.] At the 2009 hearing, plaintiff requested a closed period of disability covering April 1, 2004, through February 2007. [AR at 686, 856-59.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
(continued...)

or driving, no work requiring hypervigilance, and no work requiring greater than infrequent contact with the general public. [Plaintiff] can stand and/or walk no more than four hours out of eight and sit in an unrestricted manner provided normal breaks . . . such as every two hours, lift and/or carry 20 pounds occasionally and 10 pounds frequently and can perform work requiring no more than occasional stooping and bending. [Plaintiff] is able to climb stairs but not ladders, work at unprotected heights or balance. [Her] work environment should be air-conditioned for temperature control." [AR at 689.] At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 692.] At step five, the ALJ determined that plaintiff can perform jobs that exist in significant numbers in the national economy, specifically as a hand packager and a small products assembler. Accordingly, the ALJ found plaintiff not disabled. [AR at 692-93.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ (1) erred in determining that plaintiff can perform the jobs of hand packager and small products assembler; and (2) improperly evaluated the opinion of a treating physician. [Joint Stipulation ("JS") at 3-9, 12-19.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

**A.  PLAINTIFF'S ABILITY TO PERFORM OTHER WORK**

Plaintiff contends that the ALJ erred at step five by relying on vocational expert ("VE") testimony that conflicts with the Dictionary of Occupational Titles ("DOT").[4] [JS at 3-9, 11-12.] The Court disagrees.

---

[3](...continued)
be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] "The DOT is 'the Secretary's primary source of reliable job information.'" Johnson v. Shalala, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995) (quoting Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)).

At step five of the sequential analysis, the Commissioner has the burden to demonstrate that the claimant can perform work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1560(b)(3)). "[T]he best source for how a job is generally performed is usually the [DOT] . . . , [and] for an ALJ to accept [VE] testimony that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). When an ALJ's decision contradicts the DOT, the ALJ must offer an explanation of why he is rejecting the DOT's description. See Johnson, 60 F.3d at 1434. Specifically, "to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain the deviation." Pinto, 249 F.3d at 847; see Johnson, 60 F.3d at 1435 (holding that the DOT raises a presumption as to how a job is performed; the presumption is rebuttable "only insofar as the record contains persuasive evidence to support the deviation"). Ultimately, "[w]hether there are a significant number of jobs a claimant is able to perform with [her] limitations is a question of fact to be determined by [the ALJ]." Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986). As such, the Court will not disturb the ALJ's determination unless it is not supported by substantial evidence. See Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003) (noting that factual determinations must be upheld if they "are supported by substantial evidence").

Here, the VE testified at the 2009 hearing that a hypothetical individual with plaintiff's RFC, age, education, and work experience could perform the occupations of small products assembler II and hand packager. [AR at 884-86.] The VE referred in her testimony to a "work summary" she prepared for the case, which identified DOT Number 559.687-074 for the hand packager position and DOT Number 739.687-030 for the small products assembler II position. [AR at 728, 885.] Plaintiff abandoned her initial argument that the VE did not identify DOT numbers for these positions, but maintains that the ALJ nonetheless erred in determining that plaintiff could perform these occupations. [JS at 11-12.] First, plaintiff argues that the hand packager occupation conflicts with the ALJ's determination that plaintiff's "work environment should be air-conditioned

for temperature control" because "plaintiff would be required to carry cartons into storage areas." [JS at 11-12; AR at 689.] The Court perceives no inherent conflict between the requirement to carry cartons into a storage area and the limitation to working in an air-conditioned environment. Indeed, the DOT description for the hand packager occupation provides that exposure to weather, extreme cold, or extreme heat is "[n]ot [p]resent." DOT No. 559.687-074. Substantial evidence supports the ALJ's determination that plaintiff could perform the job of hand packager.

Next, plaintiff argues that the small products assembler occupation conflicts with the ALJ's determination that plaintiff cannot operate "motorized or dangerous equipment" because it "would require plaintiff to operate . . . equipment such as . . . handtools, portable powered tools, bench machines, arbor presses, punch presses, taps, spot-welding or riveters." [JS at 12 (citing DOT No. 739.687-030); AR at 689.] But the DOT provides that the small products assembler occupation requires performance of "any combination" of the enumerated duties, not all of which entail operation of motorized or dangerous equipment, and that exposure to moving mechanical parts is "[n]ot [p]resent." DOT No. 739.687-030. Thus, there does not appear to be an inherent conflict between plaintiff's RFC and the DOT description of the small products assembler occupation, and the ALJ's determination that plaintiff could perform the occupation of small products assembler appears to be supported by substantial evidence. Even assuming the ALJ erred as to this occupation, however, the error is harmless because the ALJ properly determined at step five that plaintiff could also perform the occupation of hand packager, as discussed above. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (harmless error if "inconsequential to the ultimate disability determination"). Reversal or remand on this basis is not warranted.

**B.    TREATING PHYSICIAN'S OPINION**

Plaintiff argues that the ALJ improperly rejected the opinion of a treating physician, Dr. Mark Peterson. [JS at 12-19.] The Court disagrees.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

7

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. Where a treating physician's opinion does not contradict other medical evidence, an ALJ must provide clear and convincing reasons to discount it. An ALJ may afford less weight to a treating physician's opinion that conflicts with other medical evidence only if the ALJ provides specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citation omitted); Social Security Ruling[5] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Similar rules apply to an ALJ's evaluation of an examining physician's opinion. Lester, 81 F.3d at 830-31.

Dr. Peterson stated that he first evaluated plaintiff in September 2004 at Riverside Neighborhood Health Center, and has since seen her approximately every two to three months. [AR at 640.] He wrote a letter to plaintiff's counsel dated October 15, 2007, stating that plaintiff

> is diagnosed with Major Depressive Disorder and Borderline Personality Disorder. Her recurrent depression severely impairs her ability to concentrate and interact socially. Her prognosis is poor secondary to environmental, social, and biological factors. Although her depression occasionally partially responds to treatment, the response does not persist, and she relapses into depression which severely impairs [her] ability to function.

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[Id.] In addition, Dr. Peterson completed a check-the-box form dated July 22, 2009, indicating that plaintiff had moderate, marked, or extreme limitations in each of the sixteen areas of function enumerated on the form, and that plaintiff's impairments would cause her to be absent from work three or more days per month. [AR at 845-46.] Although the administrative record contains numerous documents from the Riverside Neighborhood Health Center and related entities [see generally AR at 276-386, 393-639, 729-49, 779-839], including some that specifically mention Dr. Peterson [e.g., AR at 466, 517, 526, 528, 731-33], it does not appear to contain any primary evaluations or treatment notes authored by Dr. Peterson.

Because Dr. Peterson's opinion concerning plaintiff's condition and her ability to function was contradicted by other medical opinions,[6] the ALJ was required to provide specific and legitimate reasons to reject it. The ALJ did so. The ALJ noted that Dr. Peterson's opinion "appears on a preprinted form solicited by Counsel merely through a series of [checked boxes] and without any specific objective or clinical support, diagnostic testing or mental status examination." [AR at 691.] Indeed, neither Dr. Peterson's letter nor the check-the-box form refers to any objective evidence supporting his opinion. [See AR at 640, 845-46.] In addition, as mentioned above, there is no primary evidence from Dr. Peterson aside from his letter and the form. Moreover, although there are notations in the records from the Riverside Neighborhood Health Center that plaintiff experienced depression and was prescribed antidepressants, "[t]he mere existence of an impairment is insufficient proof of disability" (Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)), and there are no psychiatric evaluations or other records that substantiate Dr. Peterson's opinion. [See, e.g., AR at 288 (assessing plaintiff with depression and noting "stable on Effexor"), 290 ("stable on Celexa"), 292 (prescribing Paxil; "Order [psychiatric evaluation] if Paxil [not] helpful"), 296 (noting depression and referring to psychiatry), 302 (noting depression and prescribing Celexa), 443 (noting depression and that plaintiff was "on Effexor"),

---

[6] For example, the examining psychiatrist opined in 2004 and 2005 that plaintiff "has no functional limitations from a psychiatric standpoint." [AR at 192, 244.] In 2008, the same psychiatrist opined that plaintiff had slight or moderate limitations in several areas of functioning, but "could easily recover from her symptoms within twelve months." [AR at 755-56.]

464 (noting that plaintiff was "on Effexor / Remeron" and planning follow-up with psychiatrist), 473 ("stable on Effexor / Remeron"), 476 ("saw [psychiatrist] this AM – helpful / stable mood"), 480-83, 487-88, 493-94, 502-03, 506 ("[not] as depressed but still taking [E]ffexor"), 517 ("counsel [patient] to [discuss symptoms with] Dr. Peterson frankly"), 518-19 (plaintiff complained of increased depression; doctor noted psychiatric follow up and continued plaintiff on same medications), 520-21, 529-30, 540-41, 542-43 ("[no] depression [symptoms]"; "[patient] will hold off Celexa for now. Monitor.").] At the 2007 hearing, the ALJ commented that "we better get something supportive from Dr. Peterson because . . . we're speaking in a vacuum here as far as the doctor is concerned." [AR at 674.] Plaintiff has not remedied this deficiency despite the opportunity to do so leading up to the ALJ's 2009 decision. An ALJ is entitled to reject a "treating physician's opinion that is conclusory and brief and unsupported by clinical findings" as well as a "check-off report[] that [does] not contain any explanation of the bases of [its] conclusions." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). The ALJ did not err in determining that Dr. Peterson's opinion fell into these categories. The Court therefore need not address the other reasons provided by the ALJ for rejecting Dr. Peterson's opinion. Reversal or remand on this basis is not warranted.

Plaintiff makes two further arguments regarding the ALJ's evaluation of Dr. Peterson's opinion. First, plaintiff contends that the ALJ's evaluation of Dr. Peterson's opinion does not comply with the Court's 2009 remand order. [JS at 16, 18-19.] The Court previously ordered the ALJ "to properly consider . . . the opinion of Dr. Peterson." Ballesteros v. Astrue, No. ED CV 08-798-PLA, Docket No. 16. The ALJ complied with the remand order by providing legally sufficient reasons to reject Dr. Peterson's opinion, as discussed above.

Finally, plaintiff argues that the ALJ failed to discharge his duty to develop the record because he did not "recontact[] Dr. Peterson to obtain further information regarding specific clinical or objective findings that support his opinion of disability." [JS at 17-18.] "In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's duty to develop the record further is triggered by

"[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (9th Cir. 2001). Here, however, plaintiff does not argue that there was ambiguous evidence or that the record was insufficient to allow for proper evaluation of the evidence. Instead, plaintiff argues that the ALJ should have "properly considered" Dr. Peterson's opinion that plaintiff was disabled, and that the mere existence of a conflict between the opinions of Dr. Peterson and other physicians "certainly require[d] the ALJ to assure that plaintiff's interests are considered by fully and fairly developing the record." [JS at 17-18.] The ALJ did not find that there was ambiguous evidence or that the record was insufficient to allow for proper evaluation of Dr. Peterson's opinion. Instead, as discussed above, the ALJ provided specific and legitimate reasons that were supported by substantial evidence to discount Dr. Peterson's opinion. Moreover, plaintiff had the opportunity to supplement the record prior to the 2009 hearing, and in fact submitted multiple documents, including Dr. Peterson's check-the-box form. [AR at 779-846.] However, as discussed above, none of the evidence of record substantiates Dr. Peterson's opinion. The ALJ was not required to develop the record further.

## VI.
## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 8, 2011

                                              PAUL L. ABRAMS
                               UNITED STATES MAGISTRATE JUDGE